IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

TERESA A. GOODING,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

Civil No. 1:15-cv-01921-PK

OPINION AND ORDER

PAPAK, Magistrate Judge:

    Plaintiff Teresa A. Gooding filed this action on October 10, 2015, seeking judicial review of the Commissioner of Social Security's final decision denying her application for disability insurance benefits under Title II of the Social Security Act. This court has jurisdiction over plaintiff's action pursuant to 42 U.S.C. § 405(g) and 1383(c)(3).

Page 1 - OPINION AND ORDER

I have considered all of the parties' briefs and all of the evidence in the administrative record. For the reasons set forth below, the Commissioner's decision is **REVERSED** and this matter is remanded for the calculation and payment of benefits.

## DISABILITY ANALYSIS FRAMEWORK

To establish disability within the meaning of the Act, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner has established a five-step sequential process for determining whether a claimant has made the requisite demonstration. *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 416.920(a)(4). At the first four steps of the process, the burden of proof is on the claimant; only at the fifth and final step does the burden of proof shift to the Commissioner. *See Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the Administrative Law Judge considers the claimant's work activity, if any. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. § 416.920(a)(4)(I). If the ALJ finds that the claimant is engaged in substantial gainful activity, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 140; *see also* 20 C.F.R. §§ 416.920(a)(4)(I), 416.920(b). Otherwise, the evaluation will proceed to the second step.

At the second step, the ALJ considers the medical severity of the claimant's impairments. *See Bowen*, 482 U.S. at 140-141; *see also* 20 C.F.R. § 416.920(a)(4)(ii). An impairment is "severe" if it significantly limits the claimant's ability to perform basic work activities and is expected to persist for a period of twelve months or longer. *See Bowen*, 482 U.S. at 141; *see also*

Page 2 - OPINION AND ORDER

20 C.F.R. § 416.920(c). The ability to perform basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b); *see also Bowen*, 482 U.S. at 141. If the ALJ finds that the claimant's impairments are not severe or do not meet the duration requirement, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(ii), 416.920(c). Nevertheless, it is well established that "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), *citing Bowen*, 482 U.S. at 153-154. "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual[']s ability to work." *Id.*, *quoting* S.S.R. 85-28, 1985 SSR LEXIS 19 (1985).

If the claimant's impairments are severe, the evaluation will proceed to the third step, at which the ALJ determines whether the claimant's impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d). If the claimant's impairments are equivalent to one of the impairments enumerated in 20 C.F.R. § 404, subpt. P, app. 1, the claimant will conclusively be found disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iii), 416920(d).

If the claimant's impairments are not equivalent to one of the enumerated impairments, between the third and the fourth steps the ALJ is required to assess the claimant's residual functional capacity ("RFC"), based on all the relevant medical and other evidence in the claimant's case record. *See* 20 C.F.R. § 416.920(e). The RFC is an estimate of the claimant's capacity to perform sustained, work-related physical and/or mental activities on a regular and

Page 3 - OPINION AND ORDER

continuing basis,[1] despite the limitations imposed by the claimant's impairments. *See* 20 C.F.R. § 416.945(a); *see also* S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

At the fourth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's past relevant work. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv). If, in light of the claimant's RFC, the ALJ determines that the claimant can still perform his or her past relevant work, the claimant will be found not disabled. *See Bowen*, 482 U.S. at 141; *see also* 20 C.F.R. §§ 416.920(a)(4)(iv), 416.920(f). In the event the claimant is no longer capable of performing his or her past relevant work, the evaluation will proceed to the fifth and final step, at which the burden of proof shifts, for the first time, to the Commissioner.

At the fifth step of the evaluation process, the ALJ considers the RFC in relation to the claimant's age, education, and work experience to determine whether a person with those characteristics and RFC could perform any jobs that exist in significant numbers in the national economy. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. If the Commissioner meets her burden to demonstrate the existence in significant numbers in the national economy of jobs capable of being performed by a person with the RFC assessed by the ALJ between the third and fourth steps of the five-step process, the claimant is found not to be disabled. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g), 416.960(c), 416.966. A claimant will be found entitled to benefits if the Commissioner fails to meet that burden at the fifth step. *See Bowen*, 482 U.S. at 142; *see also* 20 C.F.R. §§ 416.920(a)(4)(v), 416.920(g).

---

[1] "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." S.S.R. No. 96-8p, 1996 SSR LEXIS 5 (July 2, 1996).

Page 4 - OPINION AND ORDER

## LEGAL STANDARD

A reviewing court must affirm an Administrative Law Judge's decision if the ALJ applied proper legal standards and his or her findings are supported by substantial evidence in the record. *See* 42 U.S.C. § 405(g); *see also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007), *citing Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006).

The court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Id., quoting Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998). The court may not substitute its judgment for that of the Commissioner. *See id., citing Robbins*, 466 F.3d at 882; *see also Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). Moreover, the court may not rely upon its own independent findings of fact in determining whether the ALJ's findings are supported by substantial evidence of record. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003), *citing SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947). If the ALJ's interpretation of the evidence is rational, it is immaterial that the evidence may be "susceptible [of] more than one rational interpretation." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), *citing Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984).

/ / /

## SUMMARY OF ADMINISTRATIVE RECORD[2]

Gooding was 53 years old on January 13, 2014, the date of the third hearing. Tr. 43.[3] She completed the ninth grade. Prior to her claimed disability onset date Gooding had substantial gainful employment as a customer service representative and dispatcher. Tr. 29.

### I. The Medical Record

The medical record is extensive and the parties are familiar with it. Accordingly, it will be set out below only as relevant.

### II. The Hearing Testimony

On April 13, 2011, a hearing was conducted before an ALJ in connection with Gooding's application. Tr. 78-119. A supplemental hearing occurred on September 21, 2011. Tr. 55-77. Gooding, her non-attorney representative, and a vocational expert were present at both hearings.

### A. The April 2011 Hearing

At the April 21011 hearing, Gooding was 50 years old and had completed the ninth grade. Tr. 82. She could read and write. She last worked part-time in retail sales for about a month the prior November-December. Gooding last worked full-time for Charter Communications in 2009, and was released from the job in October 2009 after several months of medical leave. Tr. 85. She earned $54,000 in 2008 because she was paid while on medical leave. She did door to door cable services sales and carried about 25 pounds of equipment. Tr. 86.

---

[2] The following recitation constitutes a summary of the evidence contained within the Administrative Record, and does not reflect any independent finding of fact by the court.

[3] Citations to "Tr." refer to the page(s) indicated in the official transcript of the administrative record filed herein as Docket No. 8.

Page 6 - OPINION AND ORDER

In 2009 and 2010 Gooding received unemployment benefits and applied for many jobs. Tr. 87. She would have accepted full-time work if it were offered. She sought a sales job where she could alternate between sitting and standing. Tr. 88. Gooding sold eyeglass frames, which is very stressful. Tr. 89. Sitting was very difficult.

Gooding took Ativan, Percocet, ibuprofen, and Prilosec without side effects. Tr. 91. She could sit for about 15 minutes before her legs go numb. Tr. 92. She could stand for about ten minutes before she needed to sit down. She could walk for ten to fifteen minutes. Her legs would swell and several times a week and she would lie down for about 30 minutes. Gooding had a crush injury to her dominant right hand the previous December, as a result of which she had trouble grasping and twisting. Tr. 95.

Plaintiff had pain in her neck, back arms, legs, knees, and feet. She has headaches almost every day, and migraines two to three times a week. Tr. 96. She was not receiving any mental health care. Gooding rates her daily pain at six or seven out of ten, reduced by Percocet and ibuprofen to four or five. Tr. 97. She stretched two or three times a week but it was very painful.

Gooding lost her health insurance when her job ended with Charter Communications. She was able to prepare meals and dress and groom herself, but she had problems dealing with coworkers because of anxiety. Tr. 101. She takes Ativan to help her sleep. She could pick up a gallon of milk with difficulty but her fingers swell and get stiff. Tr. 104. Gooding attempted to work at a retail store but quit after two days of training because it was too stressful and she could not keep up with the typing. Tr. 105. While working part-time Gooding sometimes left work early because of pain. Tr. 106. Her legs would swell and she had pain in her neck and back.

Page 7 - OPINION AND ORDER

Her legs got cold. When she was in pain she woild quote the wrong price on an item. Tr. 108. When her legs are cold she had to stop and rub them, and this occurred daily. Tr. 110. She had a limited range of motion in her neck, and could lift up to 25 pounds from waist height.

## B. The September 2011 Hearing

Gooding testified that she did not have a mental impairment. Tr. 60. She "can't comprehend things so I tend to kind of fall apart." Tr. 61. She attended some counseling in 2011 but did not complete it. Gooding said that "falling apart" meant she "can't comprehend it. Can't follow through, so I get work, you know, they want me to fulfill an assignment and I can't because I don't know what to do. I can't do the job." *Id.* It would take her 30 minutes to deal with a customer when it was supposed to take seven minutes.

Gooding's representative waived any claim of mental health impairment. Tr. 62. Gooding has had to leave lines at the grocery store because the pain in her legs made her need to sit down. Tr. 63. She can sit for ten to twenty minutes before her leg and back pain require her to change position. Fluid builds up in Gooding's knee and her doctors have told her to elevate her legs. Tr. 64. This has been a problem since the 1980s. A compression stocking was prescribed but Gooding found it did not help and she quit wearing it after three or four months. Tr. 65. She has carpal tunnel splints which she wears two or three nights a week. Tr. 66. She has tingling, numbness, and shooting pains in her right hand. She cannot pull the blankets up on the bed or hold a cup of coffee. Tr. 67.

On December 9, 2011, the ALJ issued a decision finding Plaintiff not disabled. Tr. 125-34. Gooding requested review of the ALJ's decision and the Appeals Council granted her request on August 8, 2013. The ALJ held a third hearing on January 13, 2014. Tr. 40-54.

Page 8 - OPINION AND ORDER

## C. The January 2014 Hearing

Gooding was 53 years old and represented by an attorney. She had not completed any education or worked since the September 2011 hearing. Tr. 43. In November 2011 Gooding had a psychological evaluation with Katherine Green, Ph.D. Thereafter she saw a counselor for about three months until her insurance expired. Gooding could not recall whether she had any medication for mental health conditions, although she tried several prescriptions for unknown reasons. Since the September 2011 hearing her right hand pain and numbness had become worse, and her left hand began hurting a few months before the third hearing.

On March 6, 2014, the ALJ issued a decision finding Gooding not disabled. Tr. 9-39. In August 2015 the Appeals Council declined to review the ALJ's decision. Tr. 1-7. Accordingly, the ALJ's decision became the Administration's final order for purposes of judicial review. *See* 20 C.F.R. § 422.210(a); *see also, e.g., Sims v. Apfel*, 530 U.S. 103, 107 (2000). This action followed.

## SUMMARY OF ALJ FINDINGS

At the first step of the five-step sequential evaluation process, the Administrative Law Judge found Gooding did not engage in substantial gainful activity at any time following her claimed disability onset date of May 15, 2008 through her date last insured of December 31, 2012. Tr. 16.

At the second step, the ALJ found that Gooding's impairments of fibromyalgia, trochanteric bursitis/iliotibial band syndrome, pes anserine bursitis, mild cervical and lumbar degenerative disc disease with no neurological deficits, mild to moderate degenerative joint disease of the knees bilaterally, mild to moderate bilateral carpal tunnel syndrome, pain disorder

associated with general medical condition and psychological factors, anxiety disorder, and mild hip degenerative joint disease were "severe" for purposes of the Act. *Id.* Because an impairment was deemed severe, the ALJ proceeded to the third step of the analysis.

At the third step, the ALJ found that none of Gooding's impairments were the equivalent of any of the impairments enumerated in 20 C.F.R. § 404, subpt P, app. 1. Tr. 18. The ALJ therefore conducted an assessment of Gooding's residual functional capacity. Specifically, the ALJ found between May 15, 2008 and December 31, 2012, Gooding had the capacity to perform a reduced range of light work, and to lift and carry 20 pounds occasionally and 10 pounds frequently. She was able to stand up for one hour at a time for a total or two hours standing in an eight-hour workday. She could stand and walk in combination for a total of four hours in an eight-hour workday. Gooding was able to sit for four hours at a time up to a total of eight hours in an eight-hour workday. She was able to perform work that did not require climbing ladders, ropes, or scaffolds. She could frequently balance, stoop, crouch, crawl, and kneel. She could occasionally climb ramps and stairs, and frequently reach, handle, finger, feel, push and pull with the upper extremities. The claimant was able to frequently operate foot controls, and was able to perform work that did not require exposure to hazards such as unprotected heights or large moving equipment. Gooding could have not more than occasional exposure to wetness, dust, odors, and fumes. She could have occasional exposure to vibration and temperature extremes. She was able to understand, remember, and carry out simple instructions in a setting with occasional public and coworker contact and no teamwork assignments. Tr. 19-20.

At the fourth step of the five-step process, the ALJ found Gooding was unable to return to past relevant work as a customer service representative and dispatcher. Tr. 29. The ALJ relied

on the testimony of a Vocational Expert (VE) that an individual with the RFC set out above could perform other work, including assembler electrical accessories and electronics worker. Tr. 29-30. On that basis, the ALJ concluded Gooding was not disabled as defined in the Act at any time between May 15, 2008, and December 31, 2012. *Id.*

## ANALYSIS

Gooding contends the ALJ erred by (1) failing to find her limited to sedentary work and therefore disabled based on Medical Vocational Rule 201.10; (2) failing to find her impairments equaled Listing 14.09D; (3) improperly rejecting her testimony; and (4) improperly weighing lay witness testimony. Because the first issue is dispositive the court need not address the remaining assertions.

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). More weight is given to the opinion of a treating physician because the person has a greater opportunity to know and observe the patient as an individual. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007). In such circumstances the ALJ should also give greater weight to the opinion of an examining physician over that of a reviewing physician. *Id.* If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may only reject it for clear and convincing reasons. *Id.* (Treating physician); *Widmark v. Barnhart,* 454 F.3d 1063, 1067 (9th Cir. 2006) (examining physician). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record.

Page 11 - OPINION AND ORDER

*Orn,* 495 F.3d at 632; *Widmark,* 454 F.3d at 1066. The opinion of an nonexamining physician, by itself, is insufficient to constitute substantial evidence to reject the opinion of a treating or examining physician. *Widmark,* 454 F.3d at 1066 n. 2. The ALJ may reject physician opinions that are "brief, conclusory, and inadequately supported by clinical findings." *Bayliss v. Barnhart,* 427 F.3d 1211, 1217 (9th Cir. 2005).

## III. The Medical Evidence

### A. Treating Physician Jean T. Bieraugel, M.D.

Gooding began treatment for anxiety with Dr. Bieraugel in April 2006. Tr. 634-36. Dr. Bieraugel was Gooding's treating physician until July 2008, when she reported neck pain radiating down both arms for the past six to eight months, as well as pain in the right leg. Tr. 406. A June 2008 MRI revealed mild left foraminal stenosis at C3-4, moderate left stenosis at C4-5, and moderate bilateral foraminal stenosis C5-6. Tr. 411. Dr. Bieraugel diagnosed cervical stenosis, paresthesia, carpal tunnel syndrome, and insomnia. Tr. 406-07.

Records indicate Gooding returned to Dr. Bieraugel in February 2011, when he noted diagnoses of fibromyalgia and arthralgia for which she took ibuprofen and Percocet. Tr. 582. Gooding saw Dr. Bieraugel in April 2011 following a motor vehicle accident resulting in increased neck, back, and leg pain. Tr. 564. She appeared "mildly uncomfortable, holding neck stiffly." *Id.* Subsequent MRI of the thoracic spine was essentially normal. Tr. 562. An April 2011 MRI of Gooding's cervical spine showed degenerative changes at C4-5 and C5-6 with borderline spinal canal stenosis at both levels. Neural foraminal narrowing was present. Tr. 682-83. MRI of Gooding's lumbar spine showed mild retrolisthesis of L3-4 secondary to ligamentous laxity allowing for mild central canal narrowing, with spondylitic changes. Tr. 563.

On April 20, 2011, Gooding saw Dr. Bieraugel to discuss her disability claim. Tr. 916. Dr. Bieraugel noted Gooding's attorney suggested Gooding was disabled, and Dr. Bieraugel said he "did not disagree," but declined to be involved as he thought he would not be helpful at that point. *Id.* Gooding continued to see Dr. Bieraugel through 2011 and in September 2012 he wrote "I do feel that between dealing with chronic pain and her anxiety she is disabled." Tr. 835. In September 2012 Dr. Bieraugel wrote a letter "To Whom It May Concern" stating that he had treated Gooding regularly for the past two years for cervical disc disease and fibromyalgia with increased pain after two motor vehicle accidents. Tr. 716. Dr. Bieraugel said Gooding had "chronic daily pain that would make it difficult for her to be gainfully employed. She also suffers from anxiety and panic attacks that have worsened over the past year. This also makes it difficult for her to leave her home . . . . I do not think she is a malingerer, but has true, disabling pain and anxiety." *Id.*

### B. Treating Physician Suzan Hagar, M.D.

Dr. Hagar began treating Gooding in February 2013. Tr. 815. In September 2013 Dr. Hagar wrote a letter "To Whom It May Concern" in which she stated Gooding "is disabled by chronic neck and back pain as well as her peripheral neuropathy. These medical problems interfere with her ability to function on a day to day basis." Tr. 778. On February 6, 2014, Dr. Hagar addressed a second letter "To Whom It May Concern" in which she wrote:

> My patient Theresa Gooding has been unable to work full time since 2008. She suffers from chronic musculoskeletal pain and fatigue as well as poorly controlled depression. She is unable to lift weight greater than 8 lbs without difficulty. She has severe feet, leg, back and neck pain with prolonged sitting, standing, or walking. She is unable to concentrate and unable to complete tasks. She cries frequently and is often irritable. She has been intermittently homeless since 2011

> after losing an apartment she was no longer able to afford. She does not tolerate loud environments or strong scents. She is easily overwhelmed by change or minor stressors. She has diagnoses of spinal stenosis, carpal tunnel syndrome, hypothyroidism, depression, and fibromyalgia.
>
> In my opinion she is unlikely to be able to return to work in the future and I consider her permanently disabled.

Tr. 970.

### C. Treating Physician Ruth Lowengart, M.D.

In January 2012 Dr. Bieraugel referred Gooding to Dr. Lowengart for evaluation and treatment of chronic pain. Tr. 703-09. Dr. Lowengart reviewed numerous imaging studies and examined Gooding. Dr. Lowengart advised Dr. Bieraugel that "In my opinion she is completely disabled due to the combination of her issues of multiple areas of pain, fatigue, and episodes and uncontrollable shaking and shivering." Tr. 709. Dr. Lowengart examined Gooding at least six times between January and late April 2012, and concluded Gooding was "permanently disabled even without the motor vehicle accident," and was "in my opinion . . . completely disabled at this time." Tr. 735. In September 2012 Dr. Lowengart wrote a letter "To Whom It May Concern" in which she noted she had been treating Gooding since January and "It's my opinion she is completely disabled from gainful employment." Tr. 714.

### D. Examining Provider Katherine Greene, Psy. D.

Dr. Greene examined Gooding on two occasions in October 2011. Tr. 690-94. Dr. Greene conducted a clinical interview, interviewed Gooding's boyfriend by telephone, reviewed medical records, and administered the Symptom Assessment Checklist 45 (SA-45), Conner's

Adult ADHD, Repeatable Battery Assessment of Neuropsychological Status (RBANS), and Trail Making A & B.

On the SA-45 Gooding's total score was 82T indicating that her "overall emotional problems are at the High Risk range." Tr. 692. Gooding's scores in Somatization, Phobic Anxiety, Anxiety, and Depression were at the 98th percentile of the referent population. On the RBANS Gooding scored at the bottom of the low average range, with borderline scores in Attention and Visuospatial/Construtional and at the 16th percentile for Immediate Memory. Tr. 693. Dr. Greene concluded Gooding's memory was mild to moderately impaired, her visuospatial/contructional skills were moderately impaired, and she had trouble finding words to express herself and frequently had trouble staying on topic and reaching her point. *Id.* Gooding's attention and concentration were severely impaired. On a self-report profile of Adult Attention Deficit Gooding scored "Much Above Average" in Inattention/Memory Problems.

Dr. Greene concluded that "[g]iven [Gooding's] current combination of severe physical, emotional and cognitive deficits, it is my opinion that she is not likely to engage in competitive employment." Tr. 694. Dr. Greene diagnosed Cognitive Disorder NOS, Panic Attacks with Agoraphobia, Depressive Disorder NOS, and Posttraumatic Stress Disorder, and assessed a GAF of 45.

As set out above, the ALJ found Gooding could stand and/or walk for up to four hours in an eight hour work day, and found her capable of a reduced range of light work. Tr. 19. The ALJ stated on the record that because of Plaintiff's age and limited education, if found limited to sedentary exertional level work the ALJ would be directed by application of the grids to find Gooding disabled. Tr. 52.

Page 15 - OPINION AND ORDER

Social Security Ruling 83-10 provides that light work requires standing/walking for about six hours per day, while the ALJ found Gooding could stand/walk for four hours per day. SSR 83-10*5, Tr. 19-20. Light work is defined as follows:

> (b) *Light work.* Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

The ALJ gave "significant weight" to the June 2011 opinion of reviewing physician Alan J. Coleman, M.D. Tr. 25. Dr. Coleman reviewed medical records and opined that Gooding retained the ability to stand for two hours a day and walk for two hours a day, for a total of four hours. Tr. 675. Dr. Coleman concluded that Gooding "can perform at a sedentary level of activity. I believe the RFC which I gave her reflects this." Tr. 673.

The ALJ also gave "significant weight" to the opinions of state agency medical consultants. Tr. 25. Mary Ann Westfall, M.D., reviewed Gooding's medical record and opined in April 2009 that Gooding was able to stand or walk "at least 2 hours in an 8-hour workday." Tr. 490. Martin Kehrli, M.D. reviewed Gooding's records and in September 2009 he affirmed Dr. Westfall's opinion, stating "Initial RFC of sedentary with postural limitations is hereby affirmed." Tr. 523.

The ALJ acknowledged that if limited to sedentary work, Gooding is disabled by the application of the medical vocational guidelines. Tr. 52. There is an enormous difference between the ability to stand or walk for four hours a day and the ability to stand or walk for six hours a day as required for light work. On this record, it is clear that Gooding is limited to, at most, sedentary work, and is therefore disabled.

## REMAND

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel,* 211 F.3d 172, 1178 (9th Cir. 2000), *cert. denied,* 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings. A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings or when the record has been fully developed and the evidence is insufficient to support the Commissioner's decision. *Strauss v. Comm'r,* 635 F.3d 1135, 1138-39 (9th Cir. 2011)(quoting *Benecke v. Barnhart,* 379 F.3d 587, 593 (9th Cir. 2004)). The court may not award benefits punitively, and must conduct a "credit-as-true" analysis to determine if a claimant is disabled under the Act. *Id* at 1138.

Under the "credit-as-true" doctrine, evidence should be credited and an immediate award of benefits directed where: (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited. *Id.* The "credit-as-true" doctrine is not a mandatory rule in the Ninth Circuit, but leaves the court flexibility in determining whether to enter an award of benefits upon reversing the Commissioner's decision.

Page 17 - OPINION AND ORDER

*Connett,* 340 F.3d at 876 (citing *Bunnell v. Sullivan,* 947 F.2d 871 (9th Cir. 2003)(en banc)). The reviewing court should decline to credit testimony when "outstanding issues" remain. *Luna v. Astrue,* 623 F.3d 1032, 1035 (9th Cir. 2010).

The ALJ's determination that Gooding is capable of a reduced range of light work is erroneous for the reasons set out above. The ALJ acknowledged that if limited to sedentary work Gooding is disabled. Tr. 52. Thus, the court concludes Plaintiff is disabled based on this medical record and no useful purpose would be served by a remand of this matter for further proceedings. *See Harman,* 211 F.3d at 117.

## CONCLUSION

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter to the Commissioner pursuant to Sentence Four, 42 U.S.C. § 405(g) for the immediate calculation and payment of benefits to Plaintiff.

IT IS SO ORDERED.

DATED this 14th day of September, 2016.

*/s/ Paul Papak*
Honorable Paul Papak
United States Magistrate Judge